John Lea died in 1803, having made his will, and therein bequeathed as follows: "It is my will that my daughter Sally shall have the negro girl Rachel during her life, and at her death to be equally divided between the heirs of her body, she and her increase." (170) Sally, the daughter, married Thomas Lea, and they had three children, Nancy, Elizabeth and William; of whom Nancy married a man named Wright, and after his death she married James Evans, and they are two of the plaintiffs, and Elizabeth married C. W. Lunsford, and they are the other two plaintiffs, and William is the defendant in this suit. Mrs. Sally Lea died in July, 1840, leaving her husband and their three children surviving her, and her two daughters married at the time to their present husbands; and Thomas Lea died in November, 1844, having made his will and appointed his son, the defendant, his executor. On 14 August, 1838, Thomas Lea gave and conveyed to the defendant one of the children of the woman Rachel. In November, 1840, being about to break up housekeeping, the father divided the said Rachel and eight of her issue into three parcels, of which he then intended one lot for each of his three children, and put them in possession; and on 14 September, 1842, he made a deed of gift to the plaintiff James Evans, for Rachel and one of her children, Rebecca, being two of the lot laid off to his wife; and on 19 October, 1844, he made a deed of gift *Page 120 
to the defendant for the slaves allotted to him. He made no conveyance in his lifetime to the plaintiff Lunsford, but by his will, as the answer states, he bequeathed them to the defendant in trust for the plaintiff Elizabeth, and gave to W. Wright and M. Wright (two children of Mrs. Evans by a former marriage) the third slave which had been allotted to Mrs. Evans. In the lifetime of Thomas Lea, the defendant, as his father's agent, sold a child of the woman Rachel for $675, and after his death the defendant, as his executor, sold two others at the price of $1,016, of one of which the plaintiff James Evans became the purchaser. That plaintiff alleges that at the time he accepted the possession (171) of the negroes, and a deed of gift from his father-in-law, and also when he purchased at the sale by the executor, he was ignorant of his wife's title under his grandfather's will, and believed that the negroes belonged to her father as his absolute property, and that he had a right to dispose of them at his pleasure; and that he did not know otherwise until he consulted counsel shortly before the filing of this bill, which was on 7 January, 1847. The plaintiffs offer to confirm the sales which had been made by Thomas Lea, or by the defendant, and to take, instead of the negroes, the money received for them, with interest thereon from the death of Mrs. Lea, the mother, and from the time the sums were received by the defendant for those sold by him. The bill states that there are now sixteen of the slaves, besides those sold, of which the defendant is in possession of eight; and that the defendant had brought an action of detinue against the plaintiff C. W. Lunsford for the negroes in his possession, claiming to recover them under the bequest in his father's will, to him as trustee for the plaintiff Elizabeth. The bill prays that all the negroes may be declared to belong to the plaintiffs Nancy Evans and Elizabeth Lunsford and the defendant William, as the children of Sally Lea, deceased, and that they and the values of those which were sold, with the interest thereon, may be equally divided between them; and that an account may be taken of the hires and profits received by any of said persons since the death of the mother, the tenant for life, so that each of the parties may have a just share of the slaves and their produce and profits.
The answer insists that Thomas Lea claimed the negro Rachel and her increase as his own, under the bequest in John Lea's will, and as such disposed of them, and that the plaintiffs well knew of that claim, and acknowledged it; and that accordingly the plaintiff James Evans took a deed of gift from him for two of the slaves. And it further states that from the death of his wife, Sally, in July, 1840, to (172) his own death in November, 1844, the said Thomas claimed such of the slaves as he held in possession, as his own, and possessed them adversely to all the world; and as to those by him conveyed to *Page 121 
the defendant, that the said Thomas and the defendant claimed and held them likewise adversely to all the world; and that such adverse possessions were for a longer time than three years; and thereupon the answer insists on the lapse of time and the statute of limitations.
The limitation under which the plaintiffs claim has been held to be good in a suit brought on a similar clause of the same will. Miles v. Allen, 28 N.C. 88; Swain v. Rascoe,25 N.C. 200. The plaintiffs are therefore undoubtedly entitled to recover. In the first place, the defendant has not offered evidence of the adverse character of the possession of his father and himself. In the next place, the possession of the father was rightful up to the death of the mother in 1840, and at that time both of the daughters were married women, and have so continued ever since, so that the statute of limitations does not run against them. There is nothing in the idea that the plaintiffs, Evans and wife, are estopped from claiming her share of the negroes because he took a deed of gift of two of them to himself. That could, even at law, only operate as an estoppel as to those two, so as to prevent the donee from denying the donor's right to them. But it could not affect the right to the others, as the plaintiffs did not join in the conveyance of them, nor in any way contract to relinquish their title to them. No doubt, the parties, under a mistake of the title, acted as if the negroes belonged to the father. But nothing has been done by which the daughters could be precluded from claiming their slaves under the original gift by their grandfather; and, of course, they and their husbands may (173) sue in their right.
PER CURIAM. Decree accordingly.
Cited: Chambers v. Payne, 59 N.C. 278.